**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT COSCIA,<br><br>      Plaintiff,<br><br>- v -<br><br>AUDREY HALPERN, MD, P.C. d/b/a THE MANHATTAN CENTER FOR HEADACHE & NEUROLOGY and AUDREY HALPERN, individually,<br><br>      Defendants. | Civil Action No.: 23-cv-11066-JPC<br><br>**AMENDED COMPLAINT**<br><br>*Jury Trial Demanded* |

  Plaintiff Scott Coscia ("Coscia"), by and through his undersigned attorney, brings this Amended Complaint against Defendants Audrey Halpern, MD, P.C. d/b/a The Manhattan Center for Headache & Neurology ("Manhattan Center") and Audrey Halpern, MD ("Halpern"), and alleges as follows:

## PRELIMINARY STATEMENT

> "We discussed with the prior therapist that if you chose to be with other women, then we would be over and you could no longer work for me … you knew that I said that would mean you could no longer work for me … I'm sorry you didn't believe me."
>
> - Halpern's April 23, 2023 termination email to Coscia

  1.  This is an action for quid pro quo sexual harassment, gender discrimination, partnership status discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

  2.  The Court has original jurisdiction over Coscia's federal claims pursuant to 28

U.S.C. §§ 1331, 1343.

3. The Court has supplemental jurisdiction over Coscia's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

5. All conditions precedent to filing the instant action have been fulfilled. On or about June 12, 2023, Coscia submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about December 12, 2023, the EEOC issued Coscia a Notice of Right to Sue, and this action is being brought within 90 days of Coscia's receipt of the Notice of Right to Sue.

6. Within 10 days of the commencement of this action, Coscia will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to the New York City Administrative Code § 8-502(c).

## PARTIES

7. Plaintiff Coscia is a resident of the State of New York and former Vice President and Chief Technology Officer of Manhattan Center.

8. At all relevant times, Coscia was an "employee" of Defendants under all relevant statutes.

9. Manhattan Center is a professional corporation registered in New York and permitted to do business in New York.

10. Manhattan Center employed more than 14 employees throughout Coscia's

employment.

11. Manhattan Center conducted business at 108 West 39th Street, Suite 405, New York, NY 10018, where it employed Coscia.

12. Defendant Halpern was at all relevant times a doctor specializing in neurology and headache medicine.

13. Halpern was at all relevant times Manhattan Center's CEO and Founder.

14. Halpern had the ability to affect the terms and conditions of Coscia's employment and did so by, among other things, assigning him work, overseeing his work, evaluating his performance and providing feedback, and terminating his employment.

15. Upon information and belief, Halpern resides in New York.

16. At all relevant times, Defendants were Coscia's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

17. In or about August 2008, Manhattan Center offered Coscia the position of Vice President.

18. Manhattan Center later promoted Coscia to the position of Chief Technology Officer.

19. Coscia also served as Manhattan Center's Head of Employee Relations.

20. Coscia worked from Manhattan Center's 108 West 39th Street, New York, NY 10018 location.

21. Coscia succeeded in his role and received positive feedback based on his performance.

22. Coscia received raises and bonuses in the form of gifts paid for by Manhattan

Center.

23. While Coscia was employed by Manhattan Center, he never received any criticism or negative feedback regarding his work performance.

24. Coscia has shared a domestic partnership with Halpern since 2012.

25. Halpern often told Coscia that she could not run Manhattan Center without him.

26. Halpern told Coscia that, because he and Manhattan Center's Chief Operating Officer were doing such a great job, she wanted them to "have skin in the game."

27. Halpern accordingly founded H2C Management, LLC to allow non-licensed individuals, such as Coscia, to draw from the profits of Manhattan Center.

28. Manhattan Center falsely advertised its doctors' availability on ZocDoc for years in order to increase patient traffic.

29. Manhattan Center would routinely inform patients who scheduled appointments shown as available through ZocDoc that the time was no longer available and that the patient would need to reschedule to later date.

30. Halpern shared with Coscia her belief that advertising greater appointment availability, even if it did not reflect the practice's actual availability, would drive higher patient traffic to Manhattan Center.

31. Coscia told Halpern that using ZocDoc in that manner was deceptive and put the practice at risk.

32. Halpern ignored Coscia's complaint and Manhattan Center was subsequently suspended from ZocDoc for approximately three months because of its excessive patient cancellations.

33. In December 2023, after Plaintiff again raised the issue in the context of this

lawsuit, Manhattan Center began advertising its doctors' actual availability on ZocDoc.

34. Manhattan Center improperly characterized certain employees, such as Jennifer Cabrera, who functioned as the company's Chief Operating Officer and Chief Financial Officer, as independent contractors and issued them Form 1099s.

35. Manhattan Center did not withhold and remit state and federal payroll taxes for those employees it mischaracterized as independent contractors.

36. Halpern compounded Manhattan Center's employment violations with her own medical ethics violations.

37. Halpern prescribed Coscia controlled substances, including Adderall, Ambien, Xanax, and Wellbutrin as a means to allow herself access to those medications.

38. In violation of her ethical obligations and licensing standards, Halpern regularly took the controlled substances she prescribed for Coscia, including the Ambien, Adderall, and Xanax.

39. Halpern would, for example, combine the Ambien she took from Coscia's prescription with wine and Benadryl, referring to the combination as an "Ambidryl."

40. On May 13, 2022, at 11:35 am, Halpern sent a text message to Coscia concerning her use of the Ambien prescribed to Coscia: "Can you request refill on ambien? I would like to try from a different bottle."

41. On December 16, 2022, Halpern became visibly intoxicated in front of her employees during Manhattan Center's holiday dinner.

42. In early 2023, Halpern's behavior towards Coscia became increasingly abusive, which caused Coscia severe, continual stress.

43. Halpern continued to prescribe medication for Coscia that he did not need or want

for the sole purpose of taking the medication herself.

44. Coscia feared that refusing Halpern's requests would lead to the termination of his employment, the wages from which he relied upon for rent and basic needs.

45. In combination with Halpern's ethics violations, Manhattan Center's continuing employment violations and refusal to remedy those violations exacerbated Coscia's stress as they prevented Coscia from effectively carrying out his leadership roles as Chief Technology Officer and Head of Employee Relations.

46. In March 2023, Coscia and Halpern separated.

47. In early April 2023, Coscia told Halpern that he wanted to see other people.

48. On April 23, 2023, Halpern emailed Coscia that he could no longer work for Manhattan Center because he "chose to be with other women."

49. Halpern wrote to Coscia that "[t]here is no future for you in my business," that "[i]t is time for you to move on," and that "May 26th is a reasonable date" for Coscia's last day of employment.

50. Halpern wrote to Coscia that he "need[s] to learn … how to be a man," and that now he "could do whatever you want, not work, lie in bed and cry …"

51. In the same email, Halpern offered to give Coscia "letters of reference, and good referrals, including what an excellent job you did as project manager for the second location buildout …"

52. But for Coscia's male gender, Halpern would not have explicitly conditioned his continued employment on an exclusive sexual relationship with her.

53. But for Coscia's male gender, Halpern would not have levied gender-based insults at him.

54. On April 25, 2023, Halpern terminated Coscia's employment, emailing him that she "will have to ask that you leave as of today. I will need your keys from any of our offices, and will unfortunately have to remove your access to other accounts."

55. Halpern intentionally delayed submitting the paperwork required for Coscia's application for unemployment benefits to be processed.

56. Coscia had witnessed Halpern intentionally delay unemployment in the same manner to punish previous employees she had terminated, commenting to Coscia that "they get paid eventually."

57. On or about January 25, 2024, Halpern filed a Family Offense Petition against Coscia, citing this lawsuit and the underlying EEOC.

58. In that Petition, Halpern characterized this lawsuit and the underlying EEOC Charge as "threats," claiming that Coscia had engaged in "harassment" and "will continue his pattern of threatening, then following through with those threats."

59. Halpern's actions were retaliatory for Coscia's asserting his rights under Title VII, the NYSHRL, and the NYCHRL.

60. Halpern's actions taken cumulatively would be likely to deter a reasonable employee in Coscia's position from asserting those rights.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII)**
*Against Defendant Manhattan Center*

61. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

62. By the actions described above, among others, Defendant discriminated against Coscia by, inter alia, subjecting him to disparate treatment because of his membership in a

protected class.

63. Defendant violated Title VII by subjecting Coscia to this behavior based, in whole or in part, upon his membership in that protected class.

64. As set forth in detail above and herein, Manhattan Center discriminated against Coscia and subjected him to adverse employment actions including, but not limited to, terminating his employment.

65. As a direct and proximate result of Defendant's unlawful employment practices, Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

66. Accordingly, Defendant discriminated against Coscia because of his gender (male) and partnership status, in violation of his rights under Title VII.

67. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

**SECOND CAUSE OF ACTION**
**(Hostile Work Environment in Violation of Title VII)**
*Against Defendant Manhattan Center*

68. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

69. Defendant's actions and comments against Coscia taken cumulatively subjected him to inferior terms, conditions or privileges of employment.

70. Manhattan Center did not remedy the hostile work environment despite Coscia's complaints.

71. Manhattan Center thereby discriminated against Coscia on the basis of his membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise

failing to prevent or to remedy a discriminatory environment.

72. As a direct and proximate result of the unlawful discriminatory conduct carried out by Manhattan Center, Coscia has suffered, and continues to suffer, emotional distress for which he is entitled to an award of monetary damages and other relief.

73. Manhattan Center's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
*Against Defendant Manhattan Center*

74. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

75. As set forth in detail above, Coscia engaged in activity protected under Title VII.

76. Manhattan Center was aware that Coscia opposed unlawful conduct and/or asserted his rights under Title VII.

77. Manhattan Center, unlawfully and without cause, retaliated against Coscia as a direct result of Coscia asserting his rights under Title VII, and Coscia suffered materially adverse employment actions as a result.

78. As a direct and proximate result of Manhattan Center's unlawful employment practices, Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

79. Manhattan Center's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

80. Accordingly, Manhattan Center retaliated against Coscia in violation of his statutory rights as guaranteed by Title VII.

### FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

81. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

82. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Coscia because he was a member of a protected class.

83. Coscia is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

84. As set forth in detail above and here, Defendants discriminated against Coscia and subjected his to adverse employment actions.

85. As a direct and proximate result of the unlawful employment practices of Defendants, Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

86. Accordingly, Defendants discriminated against Coscia because of his gender (male) and partnership status, in violation of his statutory rights as guaranteed by the NYSHRL.

### FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYSHRL)
*Against All Defendants*

87. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

88. Defendants' actions and comments against Coscia taken cumulatively subjected him to inferior terms, conditions or privileges of employment.

89. Defendants did not remedy the hostile work environment despite Coscia's complaints.

90. Defendants thereby discriminated against Coscia on the basis of his membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

91. As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendants, Coscia has suffered, and continues to suffer, emotional distress for which he is entitled to an award of monetary damages and other relief.

92. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

93. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

94. As set forth in detail above, Coscia engaged in activity protected under the NYSHRL.

95. Defendants retaliated by subjecting Coscia to discrimination and adverse employment actions because of his protected activity in violation of Coscia's statutory rights.

96. Defendants were aware that Coscia opposed unlawful conduct and asserted his rights under the NYSHRL.

97. Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

98. Accordingly, Defendants retaliated against Coscia in violation of his statutory

rights as guaranteed by the NYSHRL.

## SEVENTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

99. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

100. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Coscia because he was a member of a protected class.

101. Coscia is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

102. As set forth in detail above and here, Defendants discriminated against Coscia in the terms and conditions of his employment by treating Coscia less well than his similarly situated coworkers.

103. Defendants subjected Coscia to adverse employment actions because of his gender (male) and partnership status.

104. As a direct and proximate result of the unlawful employment practices of Defendants, Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

105. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

106. Accordingly, Defendants discriminated against Coscia because of his gender (male) and partnership status, in violation of his statutory rights as guaranteed by the NYCHRL.

## EIGHTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYCHRL)
*Against All Defendants*

107. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

108. Defendants' actions and comments against Coscia taken cumulatively subjected him to inferior terms, conditions or privileges of employment.

109. Defendants did not remedy the hostile work environment despite Coscia's complaints.

110. Defendants thereby discriminated against Coscia on the basis of his membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

111. As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendants, Coscia has suffered, and continues to suffer, emotional distress for which he is entitled to an award of monetary damages and other relief.

112. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

## NINTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against All Defendants*

113. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

114. As set forth in detail above, Coscia engaged in activity protected under the NYCHRL.

115. Defendants retaliated against Coscia by treating him less well than similarly

situated employees and subjecting him to discrimination and adverse employment actions because of his protected activity in violation of the NYCHRL.

116. Defendants were aware that Coscia opposed unlawful conduct and/or asserted his rights under the NYCHRL.

117. Defendants, unlawfully and without cause, retaliated against Coscia as a direct result of Coscia asserting his rights and opposing unlawful conduct under the NYCHRL, which involved conduct reasonably likely to deter an individual from engaging in such protected activity.

118. As a direct and proximate result of Defendants' unlawful employment practices, Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

119. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

120. Accordingly, Defendants retaliated against Coscia in violation of his statutory rights as guaranteed by the NYCHRL.

## TENTH CAUSE OF ACTION
**(Aiding and Abetting in Violation the NYSHRL and NYCHRL)**
*Against Halpern*

121. Coscia repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

122. Defendant Halpern aided, abetted, incited, compelled, or coerced Defendant's unlawful conduct, including discrimination and retaliation, against Coscia by her conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

123. Halpern was aware of her role as part of the unlawful activity that she assisted in, and knowingly and substantially assisted Defendant in its violations of the NYSHRL and NYCHRL.

124. As a direct and proximate result of Halpern's conduct, Coscia has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

125. Halpern's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Coscia, entitling him to punitive damages.

## **RELIEF**

Plaintiff Scott Coscia demands judgment in his favor and against Defendants Audrey Halpern, MD, P.C. and Audrey Halpern as follows:

A. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Coscia for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

B. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Coscia for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

C. An award of punitive damages, in an amount to be determined at trial;

D. Prejudgment interest on all amounts due;

E. An award of Coscia's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Scott Coscia demands a trial by jury on all issues so triable of right.

Dated: March 13, 2024
New York, New York

**RISSMILLER PLLC**

By: */s/ Alex Rissmiller*
Alex Rissmiller
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com

*Attorney for Plaintiff Scott Coscia*